IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TINA PIERCE                        :

   v.                              :  Civil Action No. DKC 09-1917

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY                  :

**MEMORANDUM OPINION**

Three motions are pending and ready for resolution in this personal injury case: (1) a motion to dismiss and for summary judgment (ECF No. 36) filed by Defendant Washington Metropolitan Area Transit Authority ("WMATA"); (2) a motion to strike Plaintiff's expert (ECF No. 35), also filed by WMATA; and (3) a motion for leave to file a surreply (ECF No. 46) filed by Plaintiff Tina Pierce. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6. For the reasons that follow, WMATA's motion to dismiss and for summary judgment will be granted. WMATA's motion to strike will be denied as moot and Plaintiff's motion for leave to file a surreply will be denied.[1]

---

[1] Plaintiff's proposed surreply protests certain deficiencies in discovery and makes additional arguments concerning the standard of care. (ECF No. 46). Neither the discovery issues nor the tardy legal arguments have any material impact on the outcome of this motion. As such, there is no need for further consideration of those arguments.

## I. Background

### A. Factual Background

The following facts are undisputed. This case stems from an August 27, 2007 incident at the Addison Road Metrorail Station, owned and operated by WMATA, involving a mother and her minor child. Around 4:30 pm that day, Plaintiff Tina Pierce and other family members were standing under a tree at the station, waiting for a bus. (ECF No. 36-5, Pierce Depo., at 5, 6). Plaintiff's six-year-old daughter, T.S.S., climbed onto a nearby fence or gate at the station. When Plaintiff noticed her daughter on the fence, she told her to get off. (*Id.* at 9, 12). T.S.S. started to climb down and, in the course of doing so, placed her hand at the top of the fence. (ECF No. 42-2, T.S.S. Depo., at 6). The gate on the fence moved, closed, and injured T.S.S.'s finger. (*Id.* at 5-6; ECF No. 36-5, Pierce Depo., at 14).[2]

Plaintiff did not witness her daughter's injury. (ECF No. 36-5, Pierce Depo., at 12-13). Instead, she only realized something was wrong when T.S.S. ran to Plaintiff's mother and told her that her finger had been cut. (*Id.* at 12). It was then that Plaintiff saw "the blood shooting up." (*Id.*).

---

[2] Plaintiff and her family members passed through the open gate when they first arrived at Addison Road Station. (ECF No. 42-1, Pierce Depo., at 4).

No WMATA employees witnessed the incident or were in the area when T.S.S. was injured. (ECF No. 44-4, Pierce Depo., at 34; ECF No. 44-5, Clark Depo., at 4). WMATA Station Manager Connie Clark did inspect the area around the gate after the incident, where she observed a "spec[k] of blood on the fence area." (ECF No. 36-2, Clark Depo., at 4-5).

There is some dispute over the condition of the gate at the time of the accident. Plaintiff contends that the gate was "broken" because a latch on the gate was missing. In support, she provides several photographs taken by an investigator at some time after the accident (but no earlier than two days after the accident). (ECF No. 36-6, at 2-8). WMATA Manager of Special Projects Paul Kram conceded that, at least in the pictures, "[t]he latching mechanism is not present." (ECF No. 42-4, Kram Depo., at 6). Kram explained that the "design was not to lock [the gate], [but] to latch. So . . . it was designed to close after use." (*Id.* at 4). Thus, the gate would remain accessible and unlocked for those who wanted to open it. (ECF No. 36-3, Kram Depo., at 8, 9; ECF No. 36-2, Clark Depo., at 10).

B.  **Procedural Background**

Plaintiff originally filed this action in the Circuit Court for Prince George's County, asserting claims of premise liability and negligence on behalf of her minor daughter. (ECF

3

Nos. 1, 2). The case was removed to this court by WMATA, which filed an answer on July 22, 2009. (ECF No. 4). On September 9, 2009, this court granted Plaintiff leave to amend her complaint. (ECF No. 12). In the amended complaint, Plaintiff sues as parent and next friend of T.S.S. and on her own behalf, individually. (ECF No. 13). The court dismissed any claim for negligent infliction of emotional distress in an October 5, 2009 order. (ECF No. 19). WMATA then filed a motion to dismiss the remaining claims (ECF No. 36), as well as a motion to strike Plaintiff's safety expert (ECF No. 35), on May 28, 2010.

## II. Standard of Review

WMATA has moved to dismiss and for summary judgment. A court considers only the pleadings when deciding a Rule 12(b)(6) motion to dismiss. Because WMATA's motion relies extensively on matters outside the pleadings, the court will construe it as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b); *Walker v. True*, 399 F.3d 315, 319 n.2 (4th Cir. 2005); *Offen v. Brenner*, 553 F.Supp.2d 565, 568 (D.Md. 2008).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, summary judgment is inappropriate if there are

4

factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp*., 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**III. Analysis**

WMATA contends that Plaintiff's claims are barred by sovereign immunity. (ECF No. 36-1, at 3). Specifically, WMATA maintains that Plaintiff's claims are "inextricably interwoven with a challenge to the design of the fence and gates which WMATA chose to use in the exercise of its discretion." *Id.* at 6. Such discretionary decisions are, as explained below, shielded from suit. Plaintiff, on the other hand, characterizes her claims as relating "to the operation and maintenance of the fence and gate." (ECF No. 42, at 13). If that were the proper characterization, the claims would not be barred by immunity.

WMATA is a mass transit system (serving the District of Columbia and suburban areas) that enjoys a unique type of sovereign immunity with respect to certain claims. Created in 1966, WMATA was formed by an interstate compact ("the Compact") enacted and consented to by Congress and adopted by the state of Maryland, the District of Columbia, and the Commonwealth of Virginia. *Martin v. WMATA*, 667 F.2d 435, 436 (4th Cir. 1981).[3] The Compact provides that WMATA is an interstate agency and

---

[3] Legal issues related to the interpretation of the Compact are federal questions. *Smith v. WMATA*, 290 F.3d 201, 206 (4th Cir. 2002).

6

instrumentality of each of the signatories to the Compact. *Delon Hampton & Assocs., Ctd. v. WMATA*, 943 F.2d 355, 359 (4th Cir. 1991). As such an agency, WMATA enjoys the same rights and privileges as a state, including sovereign immunity. *Id.* (citing *Beatty v. WMATA*, 860 F.2d 1117, 1126 (D.C. Cir. 1988)).

WMATA's immunity is not all encompassing, as the Compact waives that immunity for some claims – *i.e.*, those that stem from the performance of a propriety, or non-governmental function. *Smith v. WMATA*, 290 F.3d 201, 206 (4th Cir. 2002). In particular, Section 80 of the Compact provides:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees, and agents committed in the conduct of any proprietary function, in accordance with the applicable signatory (including rules of conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority.

Md.Code Ann., Transp. § 10-204(80) (2010).

Determining whether something is properly labeled "propriety" or "governmental" is not easy, *Smith*, 290 F.3d at 206, but the Court of Appeals for the Fourth Circuit has provided guidance by borrowing a two-part approach to identifying "governmental" acts from the Court of Appeals for

7

the D.C. Circuit.[4]  *Smith*, 290 F.3d at 207; *James v. WMATA*, 649 F.Supp.2d 424, 430 (D.Md. 2009).  First, the test looks to whether WMATA "is engaged in a quintessential governmental function."  *Smith*, 290 F.3d at 207.  If it is, the activity is within WMATA's sovereign immunity and the inquiry ends.  *Id*.  If WMATA was not engaged in a quintessential government function, the court "must proceed to the second inquiry, [wherein] it must determine whether the challenged activity is discretionary or ministerial."  *Id.*[5]  If an activity is discretionary, WMATA is immune "from any claim, 'however negligently caused.'"  *Id.* (quoting *Dalehite v. United States*, 346 U.S. 15, 32 (1953)).  In contrast, "sovereign immunity never shields ministerial actions."  *Monument Realty LLC v. WMATA*, 535 F.Supp.2d 60, 76 (D.D.C. 2008).

Here, it cannot be said that WMATA was engaged in a quintessential government function, and "WMATA has not attempted to shoehorn itself into this narrow category of conduct."  *KiSKA Constr. Corp. v. WMATA*, 321 F.3d 1151, 1158 n.8 (D.C. Cir. 2003)

---

[4]  "[A] proper consideration in construing the Compact is the maintenance of consistency between the legal interpretations of the 'two federal circuits most likely to hear cases in which [METRO] is a party,' i.e., [the Court of Appeals for the Fourth Circuit] and the Court of Appeals for the District of Columbia."  *Smith*, 290 F.3d at 207 n.9 (quoting *Lizzi v. Alexander*, 255 F.3d 128, 134 (4th Cir. 2001)).

[5]  This distinction is also found in the Federal Tort Claims Act ("FTCA").  *Smith*, 290 F.3d at 207.

8

(internal quotations omitted). At its root, this case concerns a simple fence. Matters concerning a fence are easily distinguishable from "quintessentially governmental" activities, such as police activity, *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997), prosecutorial decisions, *Sloan v. U.S. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 760 (D.C. Cir. 2001), or firefighting, *West v. Anne Arundel Cnty., Md.*, 137 F.3d 752, 758 (4th Cir. 1998). Thus, the court must move on to the next step and classify the challenged activity as discretionary or ministerial.

At the general level, the D.C. Circuit has explained that "a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary [i.e., it is ministerial] if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required." *KiSKA Constr. Corp.*, 321 F.3d at 1159 n.9 (internal quotations omitted). Two more pointed questions dictate the outcome. First, the court considers whether any statute, regulation, or policy "specifically prescribes a course of action for an employee to follow." *Id.* at 1159. If the course is prescribed, the activity is not discretionary. Second, the court must determine whether the exercise of discretion is grounded in "social, economic, or political goals." *Id.* If it is, sovereign immunity applies.

There is no suggestion that any statute, regulation, or policy mandated WMATA to take any actions concerning the gate or fence. Thus, the court must look to whether the challenged action relates to social, economic, or political goals. To the extent that Plaintiff challenges the design of the fence or gate, courts "regularly invoke governmental function immunity to reject . . . negligent design claims against WMATA." *Plater v. Dist. of Columbia Dep't of Transp.*, 530 F.Supp.2d 101, 104 (D.D.C. 2008) (applying sovereign immunity to design of bus shelters). Indeed, various cases have applied sovereign immunity to the design of seemingly every aspect of the WMATA system. *See also, e.g.*, *Abdulwali v. WMATA*, 315 F.3d 302, 305 (D.C. Cir. 2003) (design and adequacy of warning signs); *Souders v. WMATA*, 48 F.3d 546, 549 (D.C. Cir. 1995) (design of noise level guidelines for Metrorail); *Dant v. Dist. of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987) (design of automated farecard system); *Warren v. WMATA*, 880 F.Supp. 14, 19 (D.D.C. 1995) (choice of glass in bus windows); *Jones v. WMATA*, 742 F.Supp. 24, 25 (D.D.C. 1990) (design of escalators); *Simpson v. WMATA*, 688 F.Supp. 765, 767 (D.D.C. 1988) (design of gap between train and platform); *Nathan v. WMATA*, 653 F.Supp. 247, 248-49 (D.D.C. 1986) (design of stairs). In fact, an unreported decision of the Fourth Circuit has specifically held that WMATA's decisions concerning the design of a fence are shielded from immunity.

*Szadkowski v. WMATA*, No. 96-2353, 1998 WL 116177, at *2 (4th Cir. 1998) ("WMATA's decision whether to post . . . a fence is a design decision for which it is immune from suit."); *cf. Baum v. United States*, 986 F.2d 716, 722 (4th Cir. 1993) (finding design and construction of guardrails immune from suit under FTCA).

Thus, to the extent that Plaintiff's case constitutes a challenge to the fence design, sovereign immunity would bar it. Plaintiff protests that the claims in this case "have nothing whatsoever to do with the actual design of the fence and/or gateway at issue." (ECF No. 42, at 13). The evidence she has submitted suggests otherwise. The report from Plaintiff's expert, for instance, reads as a direct attack on the design aspects of the fence. For instance:

- The expert examined photographs "to evaluate the design and construction of the railing and gate assembly" (ECF No. 42-7, at 4);

- He concludes that "[t]he design and construction of the gate and railing assembly presented a hazardous condition," namely a pinch point (*id.* at 5, 7); and

- He counsels a design change, *i.e.*, relocation of the gate's hinges (*id.* at 5).

Thus, at least to some extent, Plaintiff's claims appear to challenge the design of the fence and gate. In addition, Plaintiff's expert contends that WMATA should have locked the gate "in the fully opened or fully closed position." (*Id.* at 6, 7). This too is an attack on an element of the design of the

11

station property, and challenges a discretionary decision made by WMATA to allow the free flow of individuals through the fenced-off area while maintaining the architectural line of the fence. (ECF No. 36-3, Kram Depo., at 6). Even if one assumes that the gate was used only to allow landscaping crews to access the grassy area behind the fence (ECF No. 42, at 9), the decision to allow employee access through an unlocked gate was discretionary.[6] Thus, these challenges to WMATA's design decisions are barred by sovereign immunity.

But it is not the case that *all* of Plaintiff's claims challenge the design. Indeed, WMATA admits in its reply that "Plaintiff's 'theory' of WMATA's negligence is that a broken latch allowed the gate to swing and injure her child's finger." (ECF No. 44, at 15). Obviously, WMATA did not place a broken latch on the gate by design. Thus, if Plaintiff could prove that the broken latch caused T.S.S.'s injury, such a claim would not be barred by sovereign immunity. *See Szadkowksi*, 1998 WL 116177, at *2 ("Design is distinct from operation and maintenance . . . [and] WMATA is not shielded by sovereign

---

[6] Similarly, any failure to warn is discretionary. *See McKeel v. United States*, 178 F.Supp.2d 493, 503-04 (D.Md. 2001) (listing cases); *see also Rosebush v. United States*, 119 F.3d 438, 443 (6th Cir. 1997) ("[T]he decision whether to warn of potential danger is a protected discretionary function."). That is especially so where, as here, the danger was not hidden. *Smith*, 290 F.3d at 210.

12

immunity for such ministerial functions as the operation and maintenance of its facilities."); *see also Abduwali*, 315 F.3d at 305 ("We have drawn a distinction between complaints alleging negligent design, which the Transit Authority's immunity bars, and those alleging negligent maintenance, to which the Transit Authority's immunity does not apply.").

The fact that Plaintiff's maintenance claim is "interwoven" with apparent design claims does not automatically require dismissal of the entire case. In *Beatty v. WMATA*, 860 F.2d 1117 (D.C. Cir. 1988), for instance, Plaintiff sued WMATA for damages caused by vibrations from passing Metrorail trains. *Id.* at 1118-19. Although both parties agreed that the vibrations caused the alleged damages, they could not agree on the underlying cause of the vibrations. *Id.* at 1127. WMATA contended that the case was a challenge to the design and placement of the rail line. *Id.* Beatty, on the other hand, contended that her suit was a challenge to the *implementation* of the design; she argued that WMATA employees had forgotten to place certain beams on one side of the tracks. *Id.* The court held that summary judgment could not be granted because a trier of fact could conclude that the "alleged injuries were caused by WMATA's exercise of a ministerial function." *Id.; see also Dant*, 829 F.2d at 74 (allowing case against WMATA to proceed from motion to dismiss stage, but "only insofar as [the

13

plaintiff] can establish that the injury alleged is directly attributable to negligent maintenance and operation"). Just as in *Beatty*, the viability of Plaintiff's case rests on one central question: can she establish that T.S.S.'s injuries resulted from the negligent maintenance of the latch, which is an unprotected ministerial function?

Plaintiff has not presented sufficient evidence for a jury to return a verdict that a broken latch led to this accident. Indeed, Plaintiff has not provided any evidence that the latch was actually broken on the day of the accident. Although she has produced pictures of a broken latch on the days after the accident, she did not provide any evidence that these pictures actually reflect the condition of the fence on the day of the incident.[7]

Moreover, even assuming that the latch was broken on the day of the incident, Plaintiff did not establish that it was the proximate cause of T.S.S.'s injury. "It is a basic principle that negligence is not actionable unless it is a proximate cause

---

[7] Plaintiff states that "[a]t the time the minor child was injured the gateway latch was broken as admitted by Mr. Kram during [his] deposition." (ECF No. 42, at 4). Kram did not testify that the latch was broken *on the day of the incident*. Rather, Kram testified that the latch was broken in certain pictures taken later; Plaintiff's counsel, not Kram, indicated that those pictures reflected the condition of the latch on the day of the incident. (ECF No. 42-4, Kram Depo, at 5-6).

14

of the harm alleged." *Pittway Corp. v. Collins*, 409 Md. 218, 244 (2009) (internal quotations and brackets omitted). One element of proximate cause is cause-in-fact – the determination that the "defendant's conduct actually produced an injury." *Id.* (quotations omitted). Where only one negligent act is at issue, cause-in-fact is found where the injury would not have occurred absent that negligent act. *Id.*

Plaintiff has not provided any evidence indicating that, but for the absence of the latch, the accident would not have happened. Plaintiff conclusorily alleges that "[i]f the gate had been latched in the closed position then the minor child would not have had the opportunity to have her finger amputated." (ECF No. 42, at 14). Plaintiff does not provide, however, any evidentiary support for that contention, and Plaintiff's expert makes no mention of the latch. Without evidence, the bare assertion is not enough to survive summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of his case." (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

**IV. Conclusion**

For the foregoing reasons, WMATA's motion to dismiss and for summary judgment will be granted, WMATA's motion to strike

15

will be denied as moot, and Plaintiff's motion for leave to file a surreply will be denied.  A separate order will follow.

                                         _____/s/_____
                                         DEBORAH K. CHASANOW
                                         United States District Judge